**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JANET KELMETIS,**

                          **Plaintiff,**

    vs.                                                  **1:16-CV-00246**
                                                               **(MAD/CFH)**

**FEDERAL NATIONAL MORTGAGE**
**ASSOCIATION, as Trustee, and PHH MORTGAGE,**

                            **Defendants.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

**JANET KELMETIS**
P.O. Box 248
Gilboa, New York 12076
Plaintiff *pro se*

**REED SMITH LLP**                                **ANDREW B. MESSITE, ESQ.**
599 Lexington Avenue
New York, New York 10022
Attorneys for Defendants

**SHAPIRO, DICARO & BARAK, LLC**          **ELLIS M. OSTER, ESQ.**
175 Mile Crossing Boulevard
Rochester, New York 14624
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On March 1, 2016, Plaintiff commenced this action alleging that Defendants violated her rights under the Truth in Lending Act ("TILA"), specifically 15 U.S.C. § 1605, and under the Real Estate Settlement Procedures Act ("RESPA"), specifically 12 U.S.C. §§ 2605 and 2607. Plaintiff also seeks declaratory relief under the Declaratory Judgment Act.

Currently before the Court is Defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 20-6. On September 9, 2016, Plaintiff filed an opposition to Defendants' motion to dismiss. *See* Dkt. No. 21. On September 12, 2016, Defendants filed a reply memorandum of law in further support of Defendants' motion to dismiss. *See* Dkt. No. 22.

## II. BACKGROUND

On July 9, 2003, Plaintiff obtained a loan in the amount of $78,280.00 from Defendant PHH Mortgage ("PHH") which was secured by a mortgage on a parcel of real property commonly known as 175 Pine Tree Lane, Gilboa, New York 12076, located in Schoharie County, New York (the "Property"). *See* Dkt. No. 1 at ¶¶ 1, 2, 14, 16. That loan was subsequently sold into a securitized trust issued by Defendant Federal National Mortgage Association ("FNMA"). *See id.* at ¶ 17.

On or about March 31, 2014, Plaintiff submitted a letter concerning her loan to Defendant PHH at 2001 Bishops Gate Boulevard, Mt. Laurel, New Jersey 08054. *See id.* at ¶ 29; *id.* at 12-13. In her letter, Plaintiff identified her loan and stated she was "in dispute as to the identity of the true owner of this debt (if any)" and "in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses" as well as "about legal fees" and several other fees and charges. *See* Dkt. No. 20-4. In that same letter, Plaintiff made twenty numbered requests for various documents, including requests for a complete and itemized statement of the loan history, the call record history, and all advances or charges against the loan. *See id.* Plaintiff also requested that Defendant PHH "treat this letter as a 'qualified written request'" ("QWR") under RESPA. *See id.* By letter dated April 23, 2014, Defendant PHH stated that it did not consider Plaintiff's letter to be a QWR for two reasons: (1) PHH has "designated an

2

address for receiving QWRS and [Plaintiff's] correspondence was not mailed to that address" and (2) Plaintiff's letter failed "to include any specific question concerning the servicing of [her] loan." *See* Dkt. No. 1 at 12. Defendant PHH's letter indicates that PHH enclosed copies of Plaintiff's mortgage, note, HUD-1, payment history, and quick reference transaction codes. *See id.* Defendant PHH also identified Defendant FNMA as the owner of Plaintiff's account. *See id.*

On February 16, 2016, prior to the commencement of this federal lawsuit, Defendant PHH filed a complaint in Schoharie County Supreme Court seeking to foreclose on the Property. *See* Dkt. No. 20-3. On December 2, 2016, the state court granted PHH's motion for summary judgment, struck and dismissed Plaintiff's answer, and appointed a referee to oversee the foreclosure.

Plaintiff, proceeding *pro se*, filed the instant complaint on March 1, 2016. In her complaint, Plaintiff alleges that Defendant PHH violated TILA by failing to include certain charges on the Truth in Lending statement at the time of the loan's origination. *See* Dkt. No. 1 at ¶ 19. Plaintiff also alleges that Defendant PHH violated RESPA by accepting certain charges for the rendering of real estate settlement services which were other than for services actually performed. *See id.* at ¶¶ 26-27. Furthermore, Plaintiff contends that her March 31, 2014 letter is a QWR and that Defendant PHH failed to respond to her letter in the manner required by RESPA. *See id.* at ¶¶ 29-32. Plaintiff claims she did not become aware of Defendant PHH's alleged TILA and RESPA violations until February 2016 and that any applicable statute of limitations should run from that date. *See id.* at ¶¶ 24, 48. Plaintiff also alleges that Defendants do not have standing to attempt to foreclose on the Property and requests that the Court declare whether (i) Defendant FNMA abandoned its interest in the Property, (ii) the assignment of mortgage to Defendant FNMA is fraudulent and void, (iii) the mortgage secures the note, (iv) the mortgage is

3

enforceable by Defendant FNMA, (v) Defendant FNMA is the trustee of the securitized trust referenced in the complaint, and (vi) Defendant PHH is the servicer of Plaintiff's loan. *See id.* at ¶¶ 49, 50-53, 70.

### III. DISCUSSION

**A.      Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,'

4

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted). Both the movant and the pleader are permitted to use affidavits and other materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998));

*see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

**B.**     ***Younger* Abstention**

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264 (1821). *Younger* recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. *Younger v. Harris*, 401 U.S. 37, 53-54 (1971). Although *Younger* itself dealt only with a pending criminal proceeding, "*Younger* abstention has been extended to civil proceedings and state administrative proceedings, so long as the state court has a means of reviewing constitutional claims." *Cecos International, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (citations omitted).

"In the paradigm situation calling for *Younger* restraint, the state defendant brings a federal action challenging the statute [which is simultaneously being applied against him]." *Fernández v. Trías Monge*, 586 F.2d 848, 851 (1st Cir. 1978); *see e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-11 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing judgment against him); *Moore v. Sims*, 442 U.S. 415, 423 (federal plaintiffs seeking to enjoin state proceedings against them for child abuse). As noted by the Sixth Circuit, "*Younger* cases generally have a common procedural posture." *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010). "'In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a

6

defense in the state proceedings.'" *Id.* at 894-95 (quoting *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 (6th Cir.1984)).

*Younger* is not based upon an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted); *see also Benavidez v. Eu*, 34 F.3d 825, 829 (9th Cir. 1994) ("*Younger* abstention is not jurisdictional, but reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses") (emphasis omitted); *Schachter v. Whalen*, 581 F.2d 35, 36 n.1 (2d Cir. 1978) (per curiam) ("*Younger* abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case"). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo*:

> "Our Federalism" in its ideal form, as the Supreme Court explained in *Younger*, strives towards a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. In recognition of this balance of interests, *Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction. Giving states the first opportunity . . . to correct their own mistakes when there is an ongoing state proceeding serves the vital purpose of reaffirm[ing] "the competence of the state courts" and acknowledging the dignity of states as co-equal sovereigns in our federal system.

*Spargo*, 351 F.3d at 75 (internal quotations and citations omitted).

With this doctrinal framework in mind, the Second Circuit has instructed that "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate

7

opportunity for judicial review of his or her federal constitutional claims." *Id.* (emphasis added). "Courts in this circuit have held that Younger abstention bars federal courts from exercising jurisdiction over pending state-court foreclosure actions." *Santana v. Federal Nat'l Mortg. Ass'n*, No. 15–CV–1424, 2016 WL 3149731, *2 (N.D.N.Y. June 3, 2016) (collecting cases). "However, the Court must first determine whether the state-court foreclosure proceeding is in fact pending." *Id.*

Plaintiff's complaint challenges Defendants' standing to foreclose on the Property, *see* Dkt. No. 1 at ¶ 49, and Plaintiff's opposition to Defendants' motion to dismiss acknowledges the existence of the state proceedings, *see* Dkt. No. 21 at 4. Moreover, Defendants submit that the foreclosure proceeding is pending, s*ee* Dkt. No. 22 at 3, and have provided a state court case docket query, *see* Dkt. No. 20-3. The Court's review of the state court's most recent docket entry indicates that on December 2, 2016, the state court granted PHH's motion for summary judgment, struck and dismissed Plaintiff's answer, and appointed a referee to oversee the foreclosure. The Court therefore finds that the state court mortgage foreclosure proceeding remains pending. *See Santana*, 2016 WL 3149731, at *2 (finding "that the state-court mortgage foreclosure proceeding is still pending" where "the state court granted summary judgment to Fannie Mae in the mortgage foreclosure proceeding" and a referee's report provided that "Fannie Mae will now move the state court for judgment of foreclosure and sale").

Since the state court action remains pending, granting the declaratory relief Plaintiff requests would interfere with the state court's jurisdiction. Plaintiff's requests for declaratory relief concern Defendants' ability to foreclose on the Property. For example, Plaintiff requests that the Court declare "whether the unrecorded Assignment of Mortgage by FANNIEMAE is fraudulent and void by statute." *See* Dkt. No. 1 at ¶ 51. Therefore, the Court abstains from

8

granting Plaintiff's requested relief. *See Santana*, 2016 WL 3149731, at *1-2 (holding that *Younger* barred the court from issuing an order "declaring the foreclosure void" and granting "injunctive relief holding the mortgage void and unenforceable"); *see also Clark v. Bloomberg*, No. 10–CV–1263, 2010 WL 1438803, *2 (E.D.N.Y. Apr. 12, 2010) ("Both sets of state-court proceedings are pending, both concern the disposition of real property and hence implicate important state interests, and there is no reason to doubt that the state proceedings provide Clark with an adequate forum to make the arguments he seeks to raise in this court. Abstention doctrine thus bars Clark's claims to enjoin the foreclosure action and the eviction proceedings").

Moreover, the Court finds that it would be futile to grant Plaintiff leave to amend her claim for declaratory relief. *See Santana*, 2016 WL 3149731, at *5 ("The Court will dismiss the Plaintiff's claims for injunctive relief with prejudice to repleading in this Court pursuant to the Younger doctrine, as repleading such claims here would be futile"); *see also Haynie v. N.Y. Hous. Auth.*, No. 14–CV–5633, 2015 WL 502229, *3 (E.D.N.Y. Feb. 5, 2015) ("Here, given that Haynie's complaint is, at bottom, a challenge to his state court eviction over which the Court does not have jurisdiction, amending the complaint would be futile. The Court therefore declines to grant Haynie leave to amend his complaint"). Therefore, the Court dismisses Plaintiff's claim for declaratory relief with prejudice.

Since *Younger* does not bar claims for damages, the Court next considers Plaintiff's claims under TILA and RESPA. *See Santana*, 2016 WL 3149731, at *2 ("The Court must still consider the motion to dismiss as it applies to Plaintiff's breach of contract and fraud claims, since those claims seek monetary damages"); *Clark*, 2010 WL 1438803, at *3 ("The abstention principle enunciated in *Younger v. Harris* does not require dismissal of Clark's claims for damages").

**C.     TILA Claims**

9

Plaintiff alleges that Defendant PHH violated 15 U.S.C. § 1605 by failing to include certain charges on the Truth in Lending statement at the time of the loan's origination. *See* Dkt. No. 1 at ¶ 19. Plaintiff seeks to rescind the mortgage transaction pursuant to 15 U.S.C. § 1635 and to recover damages pursuant to 15 U.S.C. § 1640. *See id.* at ¶ 22; *id.* at 10.

*1. Rescission*

TILA "grants borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so.'" *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015) (alteration in original) (quoting 15 U.S.C. § 1635(a)). "This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements. But this conditional right to rescind does not last forever. Even if a lender *never* makes the required disclosures, the 'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.'" *Id.* (emphasis in original) (quoting 15 U.S.C. § 1635(f)).

"'This three-year period is a statute of repose, rather than a statute of limitations, meaning that the right is extinguished after the three-year period passes and is not subject to equitable tolling.'" *Reinhart v. Citimortgage, Inc.*, No. 15–CV–1095, 2016 WL 1259413, *6 (N.D.N.Y. Mar. 30, 2016) (quoting *Jacques v. Chase Bank USA, N.A.*, No. 15–CV–548, 2016 WL 423770, *9 (D. Del. Feb. 3, 2016)). Plaintiff's right to rescind the July 9, 2003 loan therefore expired in July 2006. Plaintiff, however, relies on her complaint dated March 1, 2016 as her notice of rescission. *See* Dkt. No. at ¶ 22. Plaintiff's claim for rescission is thus time-barred. *See id.*

10

("Here, even assuming Reinhart's July 24, 2011 letter to CMI sufficed as notice of his desire to rescind, plaintiff's ability to exercise that right ended in December 2009, since he obtained the loan on December 13, 2006. Accordingly, plaintiff's TILA claim for rescission must fail") (citation omitted). Therefore, the Court dismisses Plaintiff's claim for rescission with prejudice.

### 2. *Damages*

The statute of limitations for filing a private action for monetary damages under TILA is one year. *See Cardiello v. The Money Store*, 29 Fed. Appx. 780, 781 (2d Cir. 2002) ("Appellants' Truth in Lending Act ("TILA") claim is barred by the one-year statute of limitations") (citing 15 U.S.C. § 1640(e)); *McLean-Laprade v. HSBC*, No. 12–CV–1774, 2013 WL 3930565, *3 (N.D.N.Y. July 30, 2013) ("[P]rivate actions for damages based on TILA violations are subject to a one-year statute of limitations"). Moreover, "'it is well settled that, in the context of TILA claims, the "discovery rule" that [P]laintiff[ ] urge[s] this Court to adopt is applied solely to claims arising from "open-end" credit transactions, rather than . . . "closed end" transactions.'" *Murphy v. Flagstar Bank, FSB*, No. 10–CV–645, 2012 WL 2571250, *2 n.1 (N.D.N.Y. July 3, 2012) (quoting *McAnaney v. Astoria Fin. Corp.*, No. 04–CV–1101, 2007 WL 2702348, *6 (E.D.N.Y. Sept. 12, 2007)). "A mortgage transaction—such as that at issue here—is a 'closed-end credit' transaction." *Id.* Thus, "'in closed-end credit transactions, like the one at issue, the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs.'" *McLean-Laprade*, 2013 WL 3930565, at *3 (quoting *Cardiello v. The Money Store, Inc.*, No. 00–CV–7332, 2001 WL 604007, *3 (S.D.N.Y. June 1, 2001)); *see also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) (same). Here, it is undisputed that the loan was entered into on July 9, 2003. *See* Dkt. No. 1 at ¶ 14. Therefore, the applicable statute of limitations ran on July 9,

2004. Plaintiff, however, did not file her complaint until March 1, 2016. *See* Dkt. No. 1. Plaintiff's TILA claim is thus untimely by more than ten years.

Although Plaintiff does not specifically invoke equitable tolling, she references a "fraud" allegedly committed by Defendant PHH and contends that the statute of limitations on her claim for damages under TILA should run from February 2016 because that is when she alleges she discovered the fraud. *See* Dkt. No. 1 at ¶¶ 23, 24. Plaintiff also alleges she is "easily capable of amending the Complaint to remedy any alleged deficiencies identified by the Defendants." *See* Dkt. No. 21 at 4.

Equitable tolling has been allowed "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnote omitted). Equitable tolling is also proper when the plaintiff "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (citation omitted) (internal quotation marks omitted). In a claim for damages under TILA, "equitable tolling will not be applied unless the plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis of her claims." *Futterman v. Washington Mut. Bank, FA*, No. 10–CV–1002, 2010 WL 5067650, *2 (N.D.N.Y. Dec. 6, 2010) (citing *Zamito v. Patrick Pontiac*, Inc., No. 07–CV–6241, 2008 WL 3930502 *4 (W.D.N.Y. Aug. 21, 2008)). Indeed, ""the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself is* necessary to equitably toll the running of the statute of limitations[,]" . . . because if the very nondisclosure or misrepresentation

12

that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified.'" *Grimes*, 785 F. Supp. 2d at 286 (emphasis in original) (quoting *Cardiello*, 2001 WL 604007, at *5 (quoting *Pettola v. Nissan Motor Acceptance Corp.*, 44 F. Supp. 2d. 442, 450 (D. Conn. 1999))). The burden for demonstrating that equitable tolling is warranted lies with the plaintiff. *See Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000).

In the present case, Plaintiff does not allege that, much less specifically identify how, she used due diligence to detect the alleged TILA violation. Moreover, Plaintiff fails to plead any specific facts concerning concealment. As such, the Court finds that Plaintiff has failed to set forth any circumstance sufficiently extraordinary to justify the application of equitable tolling. *See McCarty v. The Bank of New York Mellon*, No. 14–CV–6756, 2015 WL 5821405, *10 n.6 (S.D.N.Y. Sept. 8, 2015) ("Plaintiff's *pro se* status does not excuse her failure to file the TILA claim before the expiry of the limitations periods. And Plaintiff does not provide any grounds for equitable tolling in her amended complaint or opposition papers. The statute of limitations, therefore, should not be equitably tolled") (citations omitted); *Arroyo v. PHH Mortg. Corp.*, No. 13–CV–2335, 2014 WL 2048384, *12 (E.D.N.Y. May 19, 2014) (finding any equitable tolling argument abandoned where the plaintiff merely "assert[ed] that her claim should be tolled until the time of discovery" and the operative complaint was "wholly devoid of any allegations regarding diligence on [the plaintiff's] part"); *Futterman*, 2010 WL 5067650, at *2-3 (rejecting equitable tolling theory where the plaintiff "made only broad allegations, void of any specific factual references, that 'Defendants actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff'" and failed to plead "any specific allegation of an act taken by Chase to prevent her from learning of any alleged RESPA or TILA violation during the limitations period" or "any specific allegations to show that she used due diligence to detect the

13

alleged TILA and RESPA violations, or that she would have discovered those violations if she had means to detect them").

The Court further finds that it would be futile to grant leave to amend. Plaintiff's claim for damages under TILA is time-barred on its face, and the complaint and Plaintiff's opposition to Defendants' motion to dismiss fail to rebut Defendants' claim that equitable estoppel does not apply. Moreover, Plaintiff's opposition fails to identify what sections of the complaint she would amend or how she might amend them. Therefore, Plaintiff's claim for damages pursuant to TILA is dismissed with prejudice. *See Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 394 (E.D.N.Y. 2014) (denying leave to replead a TILA claim where the plaintiff "'requested leave to amend without any suggestion of what changes such amendment might effect' or how such changes might rescue the complaint") (quoting *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 392 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 Fed. Appx. 54 (2d Cir. 2014)); *McCarty*, 2015 WL 5821405, at *10 n.6 (finding it would be futile to grant a *pro se* plaintiff leave to amend her TILA claim where she failed to "provide any grounds for equitable tolling in her amended complaint or opposition papers").

## D.  RESPA Claims

Plaintiff alleges that Defendant PHH violated 12 U.S.C. § 2607 by accepting certain charges at the time of origination for the rendering of real estate settlement services which were other than for services actually performed. *See id.* at ¶¶ 26-27. Furthermore, Plaintiff contends that her March 31, 2014 letter is a QWR and that Defendant PHH's response does not satisfy the requirements of 12 U.S.C. § 2605. *See* Dkt. No. 1 at ¶¶ 29-32.

### *1. Origination*

The statute of limitations for filing a claim under 12 U.S.C. § 2607 is one year. *See Grimes*, 785 F. Supp. 2d at 289 ("'Violations of Section 2607 of RESPA are subject to a one-year statute of limitations from the date of the occurrence of the violation") (quoting *Done v. HSBC Bank USA*, No. 09–CV–4878, 2010 WL 3824146, *4 (E.D.N.Y. July 19, 2010)); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10–CV–3291, 2014 WL 4742509, *10 (E.D.N.Y. Sept. 23, 2014) ("Even if Plaintiff's § 2607 claim were adequately alleged, it is barred by RESPA's one-year statute of limitations, which runs from the date of the alleged violation—*i.e.*, the payment of the illicit referral or unearned fees at closing") (citing 12 U.S.C. § 2614). In the present case, it is undisputed that the loan agreement was entered into on July 9, 2003. *See* Dkt. No. 1 at ¶ 14. Thus, the applicable statute of limitations ran on July 9, 2004. Plaintiff, however, did not file her complaint until March 1, 2016. *See* Dkt. No. 1. Plaintiff's RESPA claim is thus untimely by more than ten years.

Plaintiff contends that the statute of limitations on her RESPA origination claim should run from February 2016 because that is when she claims she learned of Defendant PHH's alleged fraud. *See* Dkt. No. 1 at ¶ 48. As with her claim for damages under TILA, the Court finds that Plaintiff has failed to set forth any circumstance sufficiently extraordinary to justify the application of equitable tolling. *See Gorbaty*, 2014 WL 4742509, at *11 ("The facts underlying Gorbaty's § 2607 claim—*i.e.*, the fees charged to and paid by Plaintiff at the closing—are associated with the origination of her mortgage loan and have been readily discoverable since that transaction settled in 2007. . . . Thus, no 'exceptional circumstances' exist to warrant application of the equitable tolling doctrine to Gorbaty's § 2607 claims"); *Arroyo*, 2014 WL 2048384, at *13

(finding equitable tolling unwarranted where the plaintiff failed to "argue[] for such" or "show[] that tolling is appropriate").

The Court further finds that it would be futile to grant leave to amend. Therefore, Plaintiff's RESPA origination claim is dismissed with prejudice. *See Arroyo*, 2014 WL 2048384, at *13-14 (dismissing § 2607 claim with prejudice where it was clearly time-barred and the plaintiff failed to argue or otherwise show that equitable tolling was appropriate).

### 2. *Qualified Written Request*

Under RESPA, a loan servicer's duties "are triggered if it receives a [QWR], defined as correspondence that identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)). "The qualified written request must be related to '**the servicing of [the] loan**.'" *Corazzini v. Litton Loan Servicing LLP*, No. 09–CV–199, 2010 WL 6787231, *11 (N.D.N.Y. June 15, 2010) (emphasis in original) (alteration in original) (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)). Furthermore, "RESPA's implementing regulations allow (but do not require) servicers to establish a designated address for QWRs." *Roth*, 756 F.3d at 182 (citing 24 C.F.R. § 3500.21(e)(1) ("By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests")). In the Second Circuit, "[a]s long as a servicer complies with the notice requirements of 24 C.F.R. § 3500.21 for designating a QWR address, a letter sent to a different address is not a QWR, even if an employee at that address . . . in fact responds to that letter." *See id.* A servicer may designate a QWR address by identifying an address as a

QWR address on a customer's monthly mortgage statement. *See id.*; *In re Residential Capital, LLC*, 533 B.R. 874, 883-84 (Bankr. S.D.N.Y. 2015). To prevail under 12 U.S.C. § 2605, a plaintiff "must allege actual damages resulting from a violation of § 2605." *Corazzini*, 2010 WL 6787231, at *11. "'[S]imply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused,' is not enough to survive a motion to dismiss." *Bonadio v. PHH Mortg. Corp.*, No. 12–CV–3421, 2014 WL 522784, *6 (S.D.N.Y. Jan. 31, 2014) (alteration in original) (citation omitted). "Although RESPA permits recovery of both actual and statutory damages, 'proof of actual damages is mandatory to recover on a § 2605(e) violation, and [ ] a § 2605(e) claim cannot stand on statutory damages alone.'" *Id.* at *5 (alteration in original) (citation omitted).

In the present matter, it is clear that many of Plaintiff's requests relate to the servicing of her loan. For example, Plaintiff's requests "for information regarding payments applied to her loans at various times" and "'fees' that were charged to the account . . . request information relating to servicing." *Corazzini*, 2010 WL 6787231, at *11. The Court finds, however, that Defendant PHH's duty to respond to Plaintiff's letter was not triggered because the letter was not sent to the address designated by PHH for the receipt and handling of QWRs. The second pages of Plaintiff's monthly mortgage statements show that Defendant PHH identified a Bowie, Maryland address as the address that customers "must use" for "Requests for Information and Notices of Error, Including Qualified Written Requests." *See* Dkt. No. 20-5. Since Plaintiff did not send her letter to that address, her request does not constitute a QWR. *See Roth*, 756 F.3d at 182-83 (granting motion to dismiss where customer failed to send her letter to the address identified on monthly mortgage statements as the location where QWRs "MUST BE SENT"); *In re Residential Capital, LLC*, 533 B.R. at 884 (servicer's duty to respond was not triggered where

customer failed to send a letter to the address identified on the second page of a monthly mortgage statement as the location where QWRs "must be sent"). Even if Plaintiff's letter did qualify as a QWR, the Court finds that Plaintiff "has failed to allege in her complaint or otherwise establish that she suffered any actual damages from the alleged RESPA violations." *Corazzini*, 2010 WL 6787231, at *12. "Plaintiff's failure to establish that she suffered actual damages from the alleged RESPA violations is fatal to her claim." *Id.*; *see also Bonadio*, 2014 WL 522784, at *6 (dismissing RESPA claim where the plaintiff failed to explain how his damages "'were caused *specifically* by [defendant's] alleged § 2605 violations" and "offer[ed] only the conclusory assertion that he suffered actual damages as a result of defendant's failure to comply with RESPA") (emphasis in original) (alteration in original) (quoting *Gorbaty*, 2012 WL 1372260, at *5).

For the foregoing reasons, Plaintiff's claim under 12 U.S.C. § 2605(e) is dismissed with prejudice. *See Bravo v. MERSCORP, Inc.*, No. 12–CV–884, 2013 WL 1652325, *3 (E.D.N.Y. Apr. 16, 2013) ("Because a redrafting of the complaint cannot remedy the shortcomings of plaintiffs attached correspondence with defendants, the cause of action [under 12 U.S.C. § 2605(e)] is dismissed with prejudice").

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Defendants' motion to dismiss Plaintiff's complaint is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 27, 2017
      Albany, New York

*Mae A. D'Agostino*
U.S. District Judge